UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CLOCKWORK IP, LLC, et al., | Case No. 2:12-cv-01532-MMD-PAL |
| Plaintiffs, | ORDER |
| v. | (Mtn for Sanctions- Dkt. #26) |
| ALADDIN ONE HOUR HVAC, INC., a Nevada corporation now known as HONEST ABE'S AC REPAIR, INC. | |
| Defendant. | |

The court held a hearing on Plaintiff's Motion for Sanctions (Dkt. #26) on October 1, 2013.  Ryan Loosvelt appeared on behalf of Plaintiffs Clockwork IP, LLC, and Quality A/C Services, Inc.  Defendant Aladdin One Hour HVAC, Inc., now known as Honest Abe's AC Repair, has not made an appearance in this case, has been defaulted, and did not appear at the hearing.  The court has considered the Motion, the supporting Affidavit of Ryan Loosvelt, and the representations of counsel at the hearing.  The court indicated at the hearing that sanctions would be imposed, but directed counsel to submit a proposed order outlining the sanctions deemed appropriate.  The court has considered the Proposed Order (Dkt. #31) submitted by counsel for Plaintiffs following the hearing.

Also before the court is Plaintiffs' Motion for Status Hearing (Dkt. #34) filed March 13, 2015.

## BACKGROUND

### I.      The Complaint.

The Complaint (Dkt. #1) in this case was filed on August 28, 2012.  It asserts claims for trademark infringement, unfair competition, deceptive trade practices, fraud, and interference with economic advantage.  Plaintiffs allege that Defendant Aladdin One Hour HVAC, Inc.

1

("Aladdin") has infringed Plaintiff's ONE HOUR family of trademarks and related intellectual property. Clockwork is a limited liability company organized under the laws of Florida. Complaint (Dkt. #1), ¶7. On information and belief, Aladdin has its principal place of business in Las Vegas, Nevada. *Id., ¶*7. Clockwork is the registered owner of numerous trademark registrations for "ONE HOUR" for repair, maintenance, and installation of services in the field of heating, ventilation and air conditioning. *Id.*, ¶9. The marks include logo marks that have the image of a stopwatch in connection with the term, "ONE HOUR." *Id.,* Plaintiff Quality ONE HOUR Air Conditioning and Heating owns and operates a company that repairs and installs home heating and air conditioning units, and has been a licensee of the Clockwork marks for over eight years. *Id.,* ¶10.

The Complaint alleges that Aladdin is using the Clockwork marks and confusingly similar marks in connection with its own heating and air conditioning repair and installation business. *Id.,* ¶14. A consumer complaint was made which describes a two-page advertisement Aladdin was running in The Yellow Pages using the Clockwork mark as the name of Defendant's company. *Id.*, ¶15. On May 27, 2011, Plaintiffs made a demand on Aladdin to cease and desist in its use of the Clockwork marks. *Id.,* ¶16. Defendant initially ignored Plaintiffs' demands, but eventually agreed to cease and desist its use of all Clockwork marks. *Id.* Just before the complaint was filed, Plaintiffs became aware that Defendant continued to use the Clockwork marks and again made a written demand to cease and desist on or about August 8, 2012. *Id.*, ¶17. Aladdin ignored the demand. *Id.*

Plaintiffs became aware that Aladdin was attempting to "palm itself off" as Plaintiffs by contacting Plaintiffs' customers and attempting to make Plaintiffs' customers believe they were dealing with Plaintiffs instead of Defendant. *Id.*, ¶18. Aladdin's unauthorized use of the Clockwork marks and "palming itself off as" Plaintiffs is alleged to cause confusion, mistake and deceive reasonably prudent customers and prospective customers into falsely believing that Aladdin's services were provided, sponsored or approved by Plaintiffs. *Id.,* ¶19.

Based on these allegations, Plaintiffs assert claims for infringement of registered trademark under 15 U.S.C. § 1114, 15 U.S.C. § 1125, unfair competition under 15 U.S.C. §

2

1125, common law trademark infringement/unfair competition/fraudulent misrepresentation/deceptive trade practices pursuant to N.R.S. §§ 598.0903 and 598.0915, and a state claim for intentional interference with economic advantage.

The demand for judgment seeks adjudication of infringement under the Lanham Act, 15 U.S.C. § 1114, 15 U.S.C. § 1125(a); adjudication of unfair competition in violation of 15 U.S.C. § 1125(a); injunctive relief and an order transferring the registration for the domain name onehouraladdin.com and aladdinonehour.com; the transference of telephone numbers included in advertising or other materials using Plaintiffs' marks or confusingly similar marks; all of Aladdin's profits from which it has been unjustly enriched; actual damages and lost profits suffered by Plaintiffs; attorney's fees and costs on the theory that this is an exceptional case under the Lanham Act, 15 U.S.C. § 1117(a); prejudgment interest; and any other relief the court deems just and proper.

## II.    Procedural History.

Aladdin was served with summons and complaint on September 4, 2012. *See* Summons Returned Executed (Dkt. #6).  On September 26, 2012, the day after an answer was due, Plaintiffs filed a Motion for Entry of Clerk's Default (Dkt. #9) when Defendant did not file an answer or other responsive pleading.  The clerk entered default as requested on the following day. *See* Clerk's Entry of Default (Dkt. #12).

On November 13, 2012, Plaintiffs applied for Leave to Conduct Damages Discovery against a Defendant in Default (Dkt. #13).  The court entered an order granting Plaintiffs' ex parte motion. *See* Order (Dkt. #14).

Plaintiffs filed an ex parte motion to compel discovery, request for sanctions and ex parte motion to change the name of the Defendant to Honest Abe's AC Repair, Inc. on May 3, 2013. *See* Ex Parte Motion (Dkt. #16).  Because the motion was filed ex parte, under seal, and there was no proof of service of the motion or the supporting declaration of Ryan Loosvelt and its attachments, the court entered an Order (Dkt. #19) on May 17, 2013, denying the motion without prejudice and directing that any subsequent motion not be filed as an "ex parte" motion.

1    The motion was refiled on May 20, 2013, with proof of service on Aladdin.  When

2    Aladdin did not timely respond or request an extension of time in which to file a response to the

3    motion, the court entered an Order (Dkt. #24) on July 5, 2013, granting in part and denying in

4    part the motion to compel.  The order gave Aladdin until July 22, 2013, in which to serve

5    counsel for Plaintiff with documents responsive to the request for production of documents and

6    subpoena duces tecum previously served on Defendant; required the corporation to produce a

7    fully-educated Rule 30(b)(6) designee authorized to bind the corporation on the subject matters

8    of the deposition topics contained in the notice of deposition and subpoena served on Aladdin;

9    required Plaintiffs to re-notice their Rule 30(b)(6) deposition of Aladdin no earlier than thirty

10   days from entry of the order, and serve the deposition notice along with a copy of the order on

11   the corporation at its last known business address and through its registered agent.

12      The order also granted Plaintiffs' request to amend the case caption to reflect the change

13   of the name of Defendant Aladdin One Hour HVAC, Inc., a Nevada Corporation, to Honest

14   Abe's AC Repair, Inc.  This request was granted because counsel for Plaintiffs attested in his

15   supporting declaration that he had been in communication with Anese Haddad, President of

16   Defendant Aladdin.  The declaration attested that on January 10, 2013, Mr. Haddad had sent a

17   fax to Plaintiffs' counsel indicating he was filing a certificate of amendment to the articles of

18   incorporation to change the company's name.  Mr. Loosvelt's declaration indicated that on

19   January 10, 2013, Aladdin filed a Certificate of Amendment with the Secretary of State of

20   Nevada changing its name to Honest Abe's AC Repair, Inc.  A copy of the Certificate of

21   Amendment was attached as an exhibit to Mr. Loosvelt's declaration.

22   **III.    Plaintiff's Motion for Sanctions (Dkt. #26).**

23      The third Motion for Sanctions now before the court (Dkt. #26) was filed on August 29,

24   2013, when Aladdin did not comply with the court's order and produce documents responsive to

25   Plaintiffs' subpoena duces tecum, or produce a Rule 30(b)(6) designee for deposition.  The

26   motion requests sanctions in the form of an order: (1) holding Defendant in contempt of court;

27   (2) sanctioning Defendant for the fees and expenses caused by Defendant's misconduct in

28   violation of the court's July 5, 2013 order; (3) compelling Defendant to produce the requested

4

discovery a second time; (4) imposing a coercive fine, payable to the court, fining Defendant per day or week for every day or week the Defendant did not provide the requested discovery; (5) imposing a fine against Defendant payable to Plaintiffs for Defendant's past misconduct; (6) precluding Defendant from opposing Plaintiffs' "impending" motion for default judgment; and (7) warning the Defendant that continued violations of the court's order may result in criminal imprisonment of Defendant's principal representative(s).

The motion seeks sanctions pursuant to LR IA 4-1 and Fed. R. Civ. P. 37(b)(2)(A).  The motion also argues that the court has the power to impose sanctions under its inherent powers and the authority to issue contempt sanctions, compensatory damages, exclude evidence and for adverse jury instructions.  Additionally, the motion seeks attorney's fees and costs incurred for attempting to obtain the discovery, and for motion practice.

Plaintiffs argue that the court should treat Aladdin's failure to comply with the July 5, 2013, order as a civil or criminal contempt, because Aladdin violated the court's order, did not substantially comply with the court's order, and the violation was not based on a good-faith and reasonable interpretation of the order.  Citing *In re: Dual-Deck Videocasette Recorder Antitrust Litigation,* 10 F.3d 693, 695 (9th Cir. 1993), the motion for sanctions asks that Aladdin be held in criminal contempt to punish Aladdin for its past conduct and deter violations from continuing in the future.  The motion also asks for an order finding Aladdin in civil contempt, and imposition of coercive penalty sanctions or a fine to obtain Aladdin's compliance with the court's orders allowing post-default discovery.  Finally, Plaintiffs request sanctions under Rule 37(b)(2)(A) precluding Aladdin from supporting or opposing Plaintiffs' motion for default judgment.

**DISCUSSION**

Plaintiffs submitted a proposed Order (Dkt. #31) after the hearing as directed.  The proposed order contained proposed findings of fact and conclusions of law and requested $4,320.75 in costs and fees incurred in attempting to obtain post-default discovery and for preparation of the motion for sanctions and proposed order.  The proposed order asks the court to hold Defendant in criminal contempt, require Defendant to pay Plaintiffs $2,500 in criminal

5

1   contempt sanctions, and remit $500 as a civil contempt sanction for each week Aladdin did not

2   comply with the orders of the court to provide the requested discovery.

3       The memorandum of points and authorities supporting the motion for sanctions, and the

4   proposed order, cites cases allowing discovery sanctions pursuant to Local Rule IA 4-1 and Rule

5   37 of the Federal Rules of Civil Procedure.   All of the Plaintiffs' arguments for imposing

6   sanctions are based on treating the Defendant as a party.   The Federal Rules of Civil Procedure

7   distinguish between parties and non-parties in establishing available discovery devices.   *Jules*

8   *Jordan Video, Inc. v. 144942 Canada Inc.,* 617 F.3d 1146, 1158 (9th Cir. 2010).   Some federal

9   rules permit discovery only from a party.   *Id.*   Other rules, such as Rule 30, permit discovery

10  from non-parties, but also impose additional burdens on the party seeking discovery.   *Id.*   "If a

11  person is a party, a simple notice of deposition is sufficient to compel attendance, while a non-

12  party's attendance can be compelled only by subpoena."   *Id.*   The Federal Rules of Civil

13  Procedure do not indicate into which category a defaulted defendant falls.   *Id.,* at 1159.   In *Jules*

14  *Jordan*, the Ninth Circuit held that a defaulted defendant should be treated as a non-party.

15  There, the Ninth Circuit adopted the reasoning of the court in *Blazek v. Capital Recovery*

16  *Assocs., Inc.*, 222 F.R.D. 360, 361 (W.D. Wis. 2004) in holding a defaulted defendant should be

17  treated as a non-party.

18      In *Blazek*, the court found that a defaulted defendant is treated as a non-party because a

19  defaulted defendant loses many of the rights of a party, such as the right to receive notice of

20  future proceedings, the right to present evidence on issues, and the right to contest the factual

21  allegations in the complaint.   When a defendant has made the decision to default, "it would not

22  seem fair to force such defendant to participate in an action to a greater degree than could be

23  required of other non-parties."   *Id.*, at 361.

24      LR IA 4-1 addresses sanctions the court may impose after notice and opportunity to be

25  heard on an attorney or party appearing in pro se who fails to appear when required, prepare for a

26  presentation to the court, comply with the Local Rules, or an order of the court.   LR IA 4-1 does

27  not apply to a non-party who fails to comply with the court's order to produce post-default

28  discovery.   Similarly, Rule 37(b)(2)(A) allows for sanctions against a party, a party's officer,

director or a managing agent, or a witness designated under Rule 30(b)(6) or 31(a)(4) who fails to obey an order to permit discovery.

Rule 30(d) applies to parties and non-parties alike.  It allows the court to impose an appropriate sanction, including reasonable expenses and attorney's fees incurred by any party, "on a person who impedes, delays, or frustrates the fair examination of a deponent."  Fed. R. Civ. P. 30(d).  In addition, Rule 45(g) permits the court issuing a subpoena to "hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it."  Fed. R. Civ. P. 45(g).

Here, the Defendant was defaulted twenty-one days after service of the summons and complaint when it failed to answer or otherwise appear.  Defendant was served with a subpoena duces tecum which attached a request for production of documents, and purported to require the defaulted Defendant to produce copies of the requested documents and responses within thirty days after service.  Defendant was also served with a subpoena to testify at a deposition and produce documents which attached a notice of deposition seeking a "person(s) most knowledgeable" to testify on 15 deposition topics.  The affidavit of service attached to the motion for sanctions reflects that the subpoena to testify at deposition and produce documents was served on Irene McMillan (registered agent) "authorized to accept service for the within-named witness."  Additionally, counsel sent a letter to Mr. Haddad at the business address for Aladdin, now known as Honest Abe's AC Repair, on July 26, 2013, requesting that he produce the subpoenaed documents by July 22, 2013, one week in advance of the scheduled July 30, 2013, deposition.  The letter also enclosed a copy of the court's order compelling the Defendant to produce the documents and produce a fully-educated Rule 30(b)(6) designee to testify on the subject matters of the deposition topics.

Defendant failed to comply with the court's July 5, 2013, Order (Dkt. #24) directing it to produce responsive documents and appear for deposition.  The question is what sanctions are appropriate to impose against an unrepresented, non-party who fails to comply with the court's order to produce post-default discovery.  The court finds an award of reasonable costs and

1  attorney's fees is an appropriate sanction pursuant to Rule 30(d) of the Federal Rules of Civil

2  Procedure.

3  **I.      Award of Attorney's Fees & Costs.**

4          The Ninth Circuit affords trial courts broad discretion in determining the reasonableness

5  of costs and fees.  *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir. 1992).  Although the

6  district court has discretion in determining the amount of the fee award, it must calculate awards

7  for attorney's fees using the "lodestar" method.  *Camacho v. Bridgeport Financial, Inc.,* 523

8  F.3d 973, 978 (9th Cir. 2008).  The lodestar is calculated by multiplying the number of hours the

9  prevailing party reasonably expended by a reasonable hourly rate.  *Id*.  The district court may, in

10  rare cases, if the circumstances warrant, adjust the lodestar to account for other factors which are

11  not subsumed within it.  *Id*.  These factors were set out in *Kerr v. Screen Extras Guild, Inc.*, 526

12  F.2d 67, 69-70 (9th Cir. 1975), *cert. denied,* 425 U.S. 951 (1976).  Relevant factors include the

13  preclusion of other employment by the attorney due to acceptance of the case; time limitations

14  imposed by the client or the circumstances; the amount involved and results obtained; the

15  undesirability of the case;[1] the nature and length of the professional relationship with the client;

16  and awards in similar cases.  *Id*. at n.1.  In most cases, the lodestar figure is a presumptively

17  reasonable fee award.  *Camacho,* 523 F.3d at 978.

18          As a general rule, the court considers the reasonable hourly rate in the relevant

19  community which is the forum in which the case is pending.  *Id*.  The court may consider rates

20  outside the forum if local counsel was unavailable because they lacked the degree of experience,

21  expertise, or specialization required to properly handle the case.  *Id*. (citing *Barjon v. Dalton*, 132

22  F.3d 496, 500 (9th Cir. 1997)).

23          The United States Supreme Court has recognized that determining an appropriate market

24  rate for the services of a lawyer is inherently difficult for a number of reasons.  *Blum v. Stenson*,

---

[1]This factor has been called into question by the Supreme Court's ruling in *City of Burlington v. Dague,* 505 U.S. 557, 561-564 (1992).  *See also Davis v. City & Cty. of San Francisco*, 976 F.2d 1536, 1546 n.4 (9th Cir. 1992), *vacated on other grounds,* 984 F.2d 345 (9th Cir. 1993) (noting "[t]he *Dague* opinion can also be read as casting doubt on the relevance of a case's desirability to the fee calculation") (internal quotation marks omitted).

465 U.S. 886, 895 n.11 (1984).  Traditional supply and demand principles do not ordinarily apply to prevailing market rates for the services of lawyers.  *Id.*  The hourly rates of lawyers in private practice varies widely.  *Id.*  The type of services provided by lawyers, as well as their experience, skill, and reputation, varies extensively, even within a law firm.  *Id.*  The fee is usually discussed with the client and may be negotiated.  *Id.*  In determining the reasonableness of attorney's fees, the hourly rate is now generally recognized.  However, "courts properly have required prevailing attorneys to justify the reasonableness of the requested rate or rates."  *Id.*  In *Blum*, the Supreme Court stated that "[t]o inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorneys' own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Id.*

The Ninth Circuit has stated that affidavits of the fee applicant's attorneys and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, are satisfactory evidence of the prevailing market rate.  *Camacho*, 523 F.3d at 980 (citing *United Steel Workers of Am. v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir. 1990)) (internal quotation marks omitted).  However, declarations of the fee applicant do not conclusively establish the prevailing market rate.  *Id.*

Plaintiffs seek attorney's fees in the amount of $4,320.75 for 8.1 hours of work at counsel's hourly rate of $460.00 for the following work:

| $230.00 | 0.5 hours | Drafting amended notice of Rule 30(b)(6) deposition and proofs of service on Defendant and Defendant's registered agent. |
|---|---|---|
| $92.00 | 0.2 hours | Coordination of hand service and mail service of court's July 5, 2013, Order on Defendant and Defendant's registered agent. |
| $368.00 | 0.8 hours | Reviewing the pleadings, papers, and orders and coordinating exhibits to Motion for Sanctions. |
| $690.00 | 1.5 hours | Researching legal bases for Motion for Sanctions. |
| $1,426.00 | 3.1 hours | Drafting the Motion for Sanctions. |

| | | |
|---|---|---|
| $322.00 | 0.7 hours | Drafting affidavit in support of Motion for Sanctions. |
| $368.00 | 0.8 hours | Attending hearing on Motion for Sanctions. |
| $230.00 | 0.5 hours | Preparing the proposed Order on Motion for Sanctions. |

If the fee applicant has not met its burden of establishing the reasonableness of the requested rates, the court may determine the rate based on its experience and knowledge of prevailing rates in the community. *See, e.g., CLM Partners LLC v. Fiesta Palms, LLC,* 2:11-cv-01387-PMP-CWH, (D. Nev. Dec. 5, 2013) (internal citation omitted). Support for the hourly rate sought is limited to Mr. Loosvelt's declaration that states that he is a partner in a law firm with over 25 offices worldwide that employs over 700 lawyers and that his hourly rate is $460. A copy of his firm bio is also attached to the declaration.

Rate determinations in other cases in the District of Nevada have found hourly rates as much as $450 for a partner and $250 for an experienced associate to be the prevailing market rate in this forum. *See, e.g., Marrocco v. Hill*, 291 F.R.D. 586 (D. Nev. 2013) (finding reasonable hourly rate in community of Nevada to be $375-$400 for partner with over thirty-five years of experience); *Aevoe Corp. v. Shenzhen Membrane Precise Electron, Ltd.*, 2012 WL 2244262 (D. Nev. June 15, 2012) (finding $400 reasonable for a partner in a firm that concentrates on complex intellectual property litigation); *Agarwal v. Oregon Mut. Ins. Co.*, 2013 WL 5882710 (D. Nev. Oct. 30, 2013) (finding $300 per partner hour and $260 per associate hour reasonable); *Stephens Media LLC v. Citihealth, LLC*, 2013 WL 4045926 (D. Nev. Aug. 7, 2013) (finding rates between $400 and $185 to be reasonable); *In re USA Commercial Mortg. Co.*, 2013 WL 3944184 (D. Nev. July 30, 2013) (finding rates between $170 and $420 to be reasonable and $275 to $775 to be unreasonable); *Cervantes v. Emerald Cascade Restaurant Systems, Inc.*, 2013 WL 3878692 (D. Nev. July 25, 2013) (finding $450 to be excessive and reducing it to $275); *Plaza Bank v. Alan Green Family Trust*, 2013 U.S. Dist. LEXIS 58657 (D. Nev. April 24, 2013) (finding $425-$475 for partner time reasonable, but $275-$375 for associate time to be excessive based on the prevailing market rate and adjusting the amount to $250-$325).

The court finds that Mr. Loosvelt's Declaration does not provide satisfactory evidence to establish the rate of $460 per hour as commensurate with "those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Camacho*, 523 F.3d at 979 (citation omitted).  It does not provide any information about the usual and customary hourly rate for similar services in the community.  Although Plaintiffs' counsel works for a law firm with an excellent reputation, Mr. Loosvelt is a partner in that firm, and the court has always found him prepared and skillful, the Supreme Court requires the court to calculate fees based on not only the hourly rate charged but also the prevailing market rate in the community for similar services by comparable lawyers. *See Blum,* 465 U.S. at 895-96.  This is a routine discovery dispute.  It is not a complex matter requiring knowledge of any specialized practice area.  Based on the court's experience and knowledge of the prevailing rates in the community, the court will adjust Mr. Loosvelt's rate to $350.00 per hour.

In addition to evidence supporting the rates claimed, the party seeking an award of fees should submit evidence supporting the hours worked. *Hensley*, 461 U.S. at 433.  Where the documentation of hours is inadequate, the district court may reduce the award accordingly. *Id.* The court has discretion to "trim fat" from, or otherwise reduce, the number of hours worked on a matter. *Edwards v. Nat'l Business Factors, Inc*., 897 F. Supp. 458, 460 (D.Nev.1995) (quotation omitted); see also *Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir.1992).  The court will award counsel sanctions in the form of attorney's fees for the 8.1 hours of work outlined in the motion and supporting declaration.  The court finds the amount of time spent was reasonable for the type of work reported.  However, as indicated, the court will reduce the hourly rate to $350/hr., awarding Plaintiffs $2,835 in attorney's fees.

Plaintiffs also seek $502.00 in costs which the court finds are reasonable.  The Motion's supporting exhibits establish the fees associated with serving the subpoenas for the original January 17, 2013, deposition, the court reporter fees for the January 17, 2013, deposition, and the costs of hand serving the court's July 5, 2013, Order, and the court will award these costs as sanctions.  Total costs and attorney's fees of $3,337.00 are awarded as a sanction for the

1   necessity of filing this motion, the proposed order, and seeking the post-default judgment

2   discovery the court allowed.

3   **II.     Additional Sanctions.**

4          The court finds that Defendant's willful failure to obey the court's orders and participate

5   in post-default discovery do not warrant additional discovery sanctions because Plaintiffs have a

6   full panoply of remedies available in seeking default judgment.

7          Plaintiffs ask for an order holding Defendant in criminal contempt, requiring Defendant

8   to pay Plaintiffs $2,500.00 in criminal contempt sanctions, and remit $500.00 as a civil contempt

9   sanction for each week the Defendant did not comply with the orders of the court to provide

10  requested discovery.  These are certainly sanctions that are available to the court.  However, the

11  court finds these sanctions are disproportionate to the violation, and would consume more

12  judicial resources enforcing them than warranted by the totality of the circumstances presented.

13         No judge tolerates a disregard of court orders.  However, the court must take into account

14  the nature of this lawsuit and what is at stake in evaluating the proportionality of any sanction

15  awarded.  Aladdin, now Honest Abe's, elected not to retain counsel or defend this action, and

16  allowed itself to be defaulted.  Plaintiffs sought post-default discovery to determine **if** they had

17  any actual damages arising out of the Defendant's conduct.  Plaintiffs have a number of statutory

18  remedies and damages that are recoverable in an application for default judgment which the

19  defaulted Defendant will not be able to oppose as a matter of law.  Plaintiffs request an order

20  precluding Defendant from opposing a motion for default judgment.  However, as indicated, as

21  the defaulted party, Defendant will not be permitted to oppose a motion for default judgment as a

22  matter of law.

23         Plaintiffs also request an order compelling Defendant to produce the requested discovery

24  a second time.  However, Aladdin One Hour HVAC, Inc. filed a Certificate of Amendment to the

25  Secretary of State of Nevada changing its name to Honest Abe's AC Repair, Inc. within four

26  months that the complaint was filed alleging infringement of the ONE HOUR family of

27  trademarks. Pursuing post default discovery against an unrepresented non-party is simply not an

28  efficient use of the court's resources.  Additionally, although the Defendant was served with a

12

subpoena duces tecum, it attached a request for production of documents which is a discovery device reserved for a party, not appropriately addressed to a non-party defaulted Defendant. Requests for production of documents were served as an attachment to the subpoena duces tecum.  Nevertheless, the request for production of documents purported to be served pursuant to Rule 34 of the Federal Rules of Procedure and sought the requested discovery "within thirty days after service of this set of request for production of documents."

The discovery requests were also extremely broad. The requests were accompanied by a page-and-a-half of definitions, and another page-and-a-half of instructions referring to the Federal Rules of Civil Procedure which an unrepresented lay person would find baffling.  The requests for production of documents themselves sought twenty broad categories of documents. The requests had no temporal limitation, and requested such information as the identity, contact information, and/or job description of any current or former employee or shareholder or officer of the Defendant; all documents that discuss, reflect or relate to each of the Defendant's current or former customers, including detailed contact information, and description of services; all documents that discuss, reflect or relate to Defendant's sales of service and products since its inception; and all documents that discuss, reflect or relate to Defendant's financial statements, including any balance sheets, profit and loss statements, and any other financial statements since the Defendant's inception.   These are extremely broad requests, and involve sensitive competitive commercial information and financial data.

The notice of deposition attached a description of the subject matter on which Rule 30(b)(6) testimony was requested.  Fifteen topics described the testimony requested from a person authorized to bind the Defendant corporation.  These topics are also extremely broad and include testimony requested concerning Defendant's communication with customers and potential customers; Defendant's sales information since inception; Defendant's revenues and expenses from its inception; all facts and circumstances relating to all of Defendant's advertising; and any legal advice that Defendant received in connection with its use of "One Hour" in its advertising.  On its face, the this request sought information protected by the attorney client privilege.  The attorney client privilege may, of course, be waived. Reliance on

the advice of counsel as a defense to infringement may constitute a waiver of the attorney client privilege.  However, this is a complex area of law that an unrepresented layperson is not likely to know about, let alone understand.

Although much of the information requested, if properly limited, would be discoverable, these requests were overbroad as served.  Ordering the Defendant to produce the discovery served and designate a Rule 30(b)(6) deponent to bind the corporation on the broad topics sought will inevitably result in additional motion practice.

Plaintiff can and should file a motion for default judgment.  Defendant will be precluded from opposing the motion for default judgment, and Plaintiffs have a full range of remedies available under the default judgment rule, the substantive law governing their claims and a developed body of case law.  Using the coercive power of the court to send the U.S. Marshals out to initiate contempt proceedings is simply not an efficient use of the court's limited resources.

Finally, this motion has been under submission to the court for an unacceptable period of time.  Although the court ruled that sanctions would be granted at the October 1, 2013 hearing, the court's decision has taken far too long.  The court sincerely regrets the amount of time it took to get this order on file.

Having reviewed and considered the matter,

**IT IS ORDERED** that:

1. Plaintiffs' Motion for Sanctions (Dkt. #26) is GRANTED IN PART and DENIED IN PART as follows:

2. Sanctions in the form of attorney's fees and costs are awarded in the amount of $3,337.00 (8.1 hours of attorney's time at $350/hr. = $2,835.00, plus $502.00 in costs).

3. By operation of law, the defaulted Defendant shall be precluded from opposing a motion for default judgment.

4. Any other request for relief not specifically addressed in this Order is DENIED.

5.  Plaintiffs' Request for Status Hearing (Dkt #34) is DENIED as moot now that the court has finally decided the matter.

DATED this 21st day of May, 2015.


_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE